UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ELIJAH BEARDEN,

          Plaintiff,                      Case No. 1:23-cv-390

v.                                            Honorable Ray Kent

TYLER GILES et al.,

          Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 9.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any inmate action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Newcomb, Bohen, Schaab, Washington, and Rewerts. Plaintiff's First and Eighth Amendment claims against Defendants Giles, Johnston, and Wight remain in the case. The Court will also deny Plaintiff's motion to appoint counsel (ECF No. 3).

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues Corrections Officers Tyler Giles,

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Unknown Johnston, Unknown Newcomb, Unknown Bohen and Unknown Schaab, and Sergeant J. Wight in their individual capacities. Plaintiff also sues DRF Warden Randee Rewerts and Director of the MDOC Heidi E. Washington in their official capacities.

Plaintiff alleges that, on June 23, 2022, Plaintiff was assaulted by another prisoner after that prisoner learned from Defendant Johnston that Plaintiff was a "snitch." (ECF No. 1, PageID.5.) Plaintiff was sent to administrative segregation, but later released without any finding of misconduct. (*Id.*)

Following Plaintiff's release from segregation, Defendant Johnston told Plaintiff that he had hoped that the other prisoner would have "knocked [Plaintiff] . . . out and maybe [Plaintiff] would stop being a rat and writing all those grievances." (*Id.*) Later that day, Plaintiff spoke with Defendant Johnston and asked why Defendant Johnston had "an issue" with Plaintiff. (*Id.*) Defendant Johnston "verbally assaulted" Plaintiff regarding a grievance that Defendant Johnston believed that Plaintiff had written. (*Id.*) Plaintiff denied writing the grievance. (*Id.*)

On June 24, 2022, Defendant Johnston was serving dinner trays. (*Id.*) When Defendant Johnston opened Plaintiff's cell door, Defendant Johnston refused to allow Plaintiff to exit, calling Plaintiff names. (*Id.*) Plaintiff requested to speak with "shift command," to which Defendant Johnston replied: "So what, you can keep being a snitch b****?" (*Id.*) Defendant Johnston punched Plaintiff in the mouth, knocking Plaintiff backwards, and causing Plaintiff to fracture his elbow. (*Id.*)

Later that day, Plaintiff told Defendant Newcomb what had happened and requested that Defendant Newcomb contact healthcare and shift command. (*Id.*) Defendant Newcomb refused to contact healthcare. (*Id.*) Defendant Johnston then told Defendant Newcomb, "Hand him some grievances on camera and give him a direct order to leave the desk and if he doesn't comply, shoot

4

him in the face with your taser." (*Id.*) Defendant Newcomb handed Plaintiff grievances and Plaintiff left the officers' station. (*Id.*) When Plaintiff again asked that healthcare and shift command be contacted, Defendant Johnston told Plaintiff to report to his cell or he would be tased. (*Id.*, PageID.6.) Plaintiff complied, later writing a grievance about Defendant Johnston's conduct. (*Id.*) Plaintiff never received medical treatment for his swollen lip or fractured elbow and was not allowed to speak with shift command. (*Id.*)

During approximately the week of July 11, 2022, through July 16, 2022, Plaintiff was interviewed by Defendant Wight on Plaintiff's grievance. (*Id.*) Defendant Wight told Plaintiff that he would "back [his] officers" and that, if Plaintiff were punched in the mouth, Plaintiff probably deserved it. (*Id.*) Plaintiff told Defendant Wight that Plaintiff would not sign off on the grievance and left the office. (*Id.*)

On or about July 18, 2022, Defendant Wight told Plaintiff to sign off on the grievance against Defendant Johnston or Defendant Wight would take Plaintiff to the "hole" for assault on a staff member. (*Id.*) Defendant Wight told Plaintiff that he had reviewed the video recording and saw Plaintiff kick Defendant Johnston, which was justification for Defendant Johnston's use of force. (*Id.*) Plaintiff told Defendant Wight that his statement was not true but saw that two non-party officers were standing nearby with gloves on, ready to cuff Plaintiff. (*Id.*) Plaintiff signed off on the grievance, noting that it was "by force." (*Id.*) Plaintiff then wrote a grievance on Defendant Wight related to this incident; however, Plaintiff's grievance was denied because Plaintiff had signed off on the grievance against Defendant Johnston. (*Id.*, PageID.6–7.)

On June 26, 2022, Defendant Newcomb wrote Plaintiff a Class I Misconduct for "dangerous contraband." (*Id.*, PageID.7) Defendant Newcomb told Plaintiff that he had been

5

shaken down for reporting Defendant Johnston's use of force. (*Id.*) Plaintiff was ultimately found guilty of possession of dangerous contraband. (*Id.*)

Plaintiff alleges that "DRF Staff" have placed Plaintiff in danger by labeling Plaintiff a "snitch," "faggot," and "child molester." (*Id.*) On June 29, 2022, Plaintiff was raped at knifepoint by non-party Prisoner Ashworth. (*Id.*) Though Plaintiff screamed for help, no one came. (*Id.*) Prisoner Ashworth was then moved to a separate wing, but in a position that allowed him to access Plaintiff's cell and steal Plaintiff's television. (*Id.*)

"[M]ultiple corrections officers" disclosed that Plaintiff had been raped and, over the course of months, inmates and officers made sarcastic and lewd comments about the assault. (*Id.*)

On November 15, 2022, after leaving his cell, Plaintiff was approached by Defendant Giles. (*Id.*) Defendant Giles asked Plaintiff what Plaintiff had in his hand. (*Id.*) When Plaintiff told Defendant Giles that it was a piece of paper with a relative's phone number, Defendant Giles made offensive comments to Plaintiff about Plaintiff's perceived sexual orientation. (*Id.*) Shortly thereafter, Plaintiff again encountered Defendant Giles on the stairs. (*Id.*, PageID.8.) Defendant Giles told Plaintiff that he would not do anything for Plaintiff unless Plaintiff performed oral sex on him. (*Id.*) Defendant Giles allowed Plaintiff to enter his cell but said that he would refuse to allow Plaintiff back out unless Plaintiff performed oral sex on him. (*Id.*) When Plaintiff screamed for help, Defendant Giles punched Plaintiff in the chest, causing Plaintiff to fall and hit his head. (*Id.*) Plaintiff requested medical attention using the emergency call button but was not provided with any. (*Id.*)

Later that day, Plaintiff told non-party Sergeant Bigelow what had transpired. (*Id.*) Sergeant Bigelow asked Plaintiff if he deserved it and told Plaintiff that no one likes him because he writes grievances and complains. (*Id.*) Plaintiff asked to see healthcare, but Sergeant Bigelow

refused. (*Id.*, PageID.9.) Sergeant Bigelow then presented Plaintiff with a Class I Misconduct for "disobeying a direct order and interference with administrative rules," written by Defendant Giles, claiming that Plaintiff refused to return to his cell. (*Id.*) Plaintiff was found not guilty after it was confirmed that the facts as alleged by Defendant Giles were not true and that Defendant Giles failed to follow proper procedure. (*Id.*) Plaintiff filed a grievance related to the events of November 15, 2022. (*Id.*)

On November 19, 2022, non-party Lieutenant Morris questioned Plaintiff about his grievance. (*Id.*) The next day, Defendant Giles came to Plaintiff's cell door, saying, "So you want to be a rat b**** and report what I said to you f***** a**?" (*Id.*) Defendant Giles told Plaintiff, "I should have punched you're a** harder." (*Id.*) Plaintiff filed a grievance related to this incident. (*Id.*, PageID.9–10.) Although Plaintiff's grievance was denied, Plaintiff was placed on a "90 day retaliation monitor." (*Id.*, PageID.10.) However, Defendant Giles continued to harass Plaintiff and subject Plaintiff to misconduct reports and excessive cell searches. (*Id.*) Unidentified corrections officers also refused to allow Plaintiff's cellmate to work his scheduled shift, telling him that if he wanted to work, he would need to "get Plaintiff gone" because Plaintiff is a snitch and files grievances. (*Id.*) After Plaintiff's cellmate refused, Defendants Giles, Schaab, Baker, and Boehn refused to let Plaintiff or his cellmate out for yard even though neither Plaintiff nor his cellmate were on sanctions. (*Id.*) Plaintiff filed a grievance as to this issue. (*Id.*) When Defendant Wight interviewed Plaintiff about his grievance, Defendant Wight told Plaintiff that things would get worse if Plaintiff did not stop writing grievances. (*Id.*) Defendant Wight denied Plaintiff's grievance. (*Id.*)

On February 2, 2023, Defendant Giles came to Plaintiff's cell and threw Plaintiff's cellmate's work materials on the floor. (*Id.*) Defendant Giles also made comments that Plaintiff

was a "snitch" and a "faggot" in front of other prisoners, causing other prisoners to harass Plaintiff and ask Plaintiff for sexual favors. (*Id.*)

On or about March 2, 2023, Plaintiff and his cellmate were taken to administrative segregation where they were subjected to strip searches, drug tests, and body scans. (*Id.*, PageID.11.) Plaintiff was also forced to undergo a urine test while fully naked, in full view of Plaintiff's cellmate. (*Id.*) Plaintiff asked why he was taken to administrative segregation but was never informed of the reason. (*Id.*)

Later that evening, Defendant Wight reviewed with Plaintiff a misconduct for "possession of a weapon." (*Id.*) The misconduct alleged that Defendant Wight was performing a search of Plaintiff's cell when he found a piece of metal sharpened to a point. (*Id.*) While Defendant Wight was explaining the charge to Plaintiff, Plaintiff's cellmate told Defendant Wight that the weapon belonged to him. (*Id.*) Defendant Wight told Plaintiff's cellmate that he did not care, stating: "Maybe if Beaden would stop writing grievances like I told him a couple weeks ago, he wouldn't be in this predicament." (*Id.*) Both Plaintiff and his cellmate were presented with charges of misconduct for possession of the weapon. (*Id.*) Plaintiff was found guilty on March 9, 2023. (*Id.*)

Plaintiff brings three counts against Defendants. In Count I, Plaintiff alleges that Defendants Giles, Johnston, and Newcomb "were deliberately indifferent to Plaintiff's health and safety by placing Plaintiff's life in danger by referring to and calling Plaintiff a 'faggot,' 'homosexual,' 'snitch[,]' and[/]or 'rat.'" (*Id.*, PageID.12.) Count II brings claims of excessive force against Defendants Giles and Johnston. (*Id.*) Count III alleges that Defendants Giles, Johnston, Newcomb, Wight, Bohen, and Schaab retaliated against Plaintiff in response to Plaintiff's actions in filing grievances and complaints. (*Id.*) Plaintiff seeks compensatory damages and injunctive relief. (*Id.*)

8

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

9

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Allegations against DRF Staff and Unidentified Corrections Officers

As a preliminary matter, Plaintiff's complaint includes allegations against DRF staff, generally, and unidentified "multiple corrections officers." These allegations are not sufficient to state a § 1983 claim against any of the named Defendants.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly,* 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim); *Frazier v. Michigan,* 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). The Sixth Circuit has explained in no uncertain terms that any "[s]ummary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable. . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Accordingly, this Court cannot construe Plaintiff's allegations against unidentified staff members or corrections officers to state a claim against any particular Defendant under § 1983.

10

### B.      Defendants Rewerts and Washington

Plaintiff sues Defendants Rewerts and Washington in their official capacities only. (ECF No. 1, PageID.3.) Official-capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). Therefore, an official-capacity suit is to be treated as a suit against the entity itself. *Id.* at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); s*ee also Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "Individuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *Graham*, 473 U.S. at 165–66. Accordingly, claims against Defendants Rewerts and Washington, each employed by the MDOC, are treated as claims against the MDOC itself.

The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

Sovereign immunity extends not only to the State itself, but also to "state instrumentalities," which includes the MDOC. *McCoy v. Michigan*, 369 F. App'x 646, 653 (6th Cir. 2010) (citing *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Turnboe v. Stegall*, 234 F.3d 1270 (6th Cir. 2000)). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit for monetary damages under the

Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy*, 369 F. App'x at 653–54. Thus, the Court will dismiss, on grounds of immunity, Plaintiff's claims for damages against Defendants Rewerts and Washington.

Here, Plaintiff seeks not only damages, but injunctive relief as well, requesting that Defendants Rewerts and Washington keep Plaintiff separate from the remaining Defendants to prevent future harm. (ECF No. 1, PageID.13.) While claims for damages against official capacity defendants are properly dismissed on grounds of immunity, an official capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Graham*, 473 U.S. at 167 n.14. Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

But, importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Plaintiff is no longer confined at DRF, where he avers that the individual Defendants are employed.

The Sixth Circuit has held that transfer to another prison facility moots a prisoner's claims for declaratory and injunctive relief. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Underlying this rule is the premise that injunctive relief is appropriate only where plaintiff can

show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the result of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

Plaintiff has not alleged facts that would show that Plaintiff will be subjected to further future conduct by the individual Defendants. Because Plaintiff is now incarcerated at IBC, and the individual Defendants are not employed at that facility, Plaintiff's official capacity claims for injunctive relief are moot. Accordingly, for the reasons set forth above, the Court will dismiss Plaintiff's official capacity claims in their entirety.

### C.  Defendants Bohen and Schaab

Plaintiff brings claims against Defendants Bohen and Schaab for retaliation, claiming that these Defendants took adverse actions against Plaintiff because of Plaintiff's conduct in filing grievances and complaints. (ECF No. 1, PageID.12.)[2] The Court construes this as a claim for violation of Plaintiff's First Amendment rights.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was

---

[2] In Plaintiff's Count III for "Retaliation," Plaintiff references both the First and Eighth Amendments. (ECF No. 1, PageID.12.) However, the First Amendment, not the Eighth Amendment, governs claims of retaliation. Any intended Eighth Amendment claim will be dismissed for failure to state a claim.

engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must allege facts that would plausibly suggest that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). However, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Plaintiff has alleged merely the ultimate fact of retaliation with respect to Defendants Bohen and Schaab. He claims that, after Plaintiff's cellmate refused to "get Plaintiff gone," multiple Defendants, including Defendants Bohen and Schaab, refused to let Plaintiff out for yard even though neither Plaintiff nor his cellmate were on sanctions. (ECF No. 1, PageID.10.)

Although the Court finds that Plaintiff's grievances and complaints were First Amendment protected activity, *see Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018), Plaintiff's complaint is devoid of facts that would plausibly suggest that Defendants Bohen and Schaab were aware of Plaintiff's protected activity, let alone that their decisions to refuse to allow Plaintiff out for yard were motivated by Plaintiff's protected activity. Certainly, the decisions by Defendants Bohen and Schaab took place after Plaintiff's protected activity. However, simply because one event precedes another by some unspecified amount of time does not automatically show retaliation. *See Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"); *cf. Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004) (noting that "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive").

Ultimately, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Plaintiff's conclusory claims of retaliation against Defendants Bohen and Schaab fall far short of the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. The Court will therefore dismiss Plaintiff's claims against Defendants Bohen and Schaab.

### D.  **Defendant Newcomb**

Plaintiff brings claims against Defendant Newcomb for Eighth Amendment deliberate indifference (Count I) and First Amendment retaliation (Count III). (ECF No. 1, PageID.12.)

#### 1.  **Eighth Amendment Deliberate Indifference**

In Count I, Plaintiff contends that Defendant Newcomb was "deliberately indifferent to Plaintiff's health and safety by . . . referring to and calling Plaintiff a 'faggot,' 'homosexual,' 'snitch[,]' and[/]or 'rat,'" in violation of Plaintiff's Eighth Amendment rights. (*Id.*, PageID.12.)

15

Although in setting out Count I, Plaintiff alleges that Defendant Newcomb engaged in this conduct, Plaintiff's complaint is devoid of any *factual* allegations that would indicate that Defendant Newcomb engaged in the conduct alleged. As discussed above, Plaintiff's allegations against DRF staff, generally, cannot be attributed to Defendant Newcomb, individually, and Defendant Newcomb cannot be held vicariously liable for the actions of others. Accordingly, the Court will dismiss Plaintiff's claim against Defendant Newcomb in Count I for Eighth Amendment deliberate indifference.

### 2. First Amendment Retaliation

Plaintiff's complaint makes the following factual allegations against Defendant Newcomb: (1) after learning of Defendant Johnston's June 24, 2022, use of force, Defendant Newcomb refused to contact healthcare, (2) Defendant Newcomb handed Plaintiff some grievances after Defendant Johnston told Defendant Newcomb to "[h]and [Plaintiff] some grievances on camera and give him a direct order to leave the desk and if he doesn't comply, shoot him in the face with your taser," and (3) Defendant Newcomb wrote Plaintiff a Class I Misconduct for "dangerous contraband," telling Plaintiff that Plaintiff was shaken down for reporting Defendant Johnston's use of force. (ECF No. 1, PageID.5–7.) The Court finds that, even accepting these allegations as true, Plaintiff fails to state a claim for First Amendment retaliation.

#### a. Events of June 24, 2022

Plaintiff claims that, after telling Defendant Johnston of the June 24, 2022, incident involving Defendant Johnston, Defendant Newcomb refused to contact healthcare and complied with Defendant Johnston's instructions to hand Plaintiff grievances and to tell Plaintiff to leave the desk. The Court finds that Plaintiff's verbal complaint regarding Defendant Johnston's conduct would be consider protected activity for purposes of the First Amendment. *See Maben*, 887 F.3d at 265. However, as discussed above, the fact that Plaintiff's verbal complaint preceded Defendant

16

Newcomb's own actions does not automatically suggest that Defendant Newcomb's actions were motivated by retaliatory animus. *See Coleman*, 474 F. App'x at 437. Plaintiff fails to provide the Court with any facts that would plausibly suggest that Defendant Newcomb would have contacted healthcare or would not have complied with Defendant Johnston's order to hand Plaintiff some grievances "but for" Plaintiff's protected activity. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (reiterating that a First Amendment retaliation claim requires evidence of "but for" causation). Thus, for the same reasons described in detail above, Plaintiff cannot state a claim of First Amendment retaliation based upon these actions.

Moreover, Plaintiff's allegation that Defendant Newcomb followed Defendant Johnston's command to hand Plaintiff some grievances, (ECF No. 1, PageID.5), does not amount to an adverse action. To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

Plaintiff does not allege that Defendant Newcomb indicated that he would comply with Defendant Johnston's order to "shoot [Plaintiff] in the face with [his] taser" or that he otherwise threatened Plaintiff when providing Plaintiff with the grievances. (ECF No. 1, PageID.5.) During this interaction, Defendant Newcomb simply provided Plaintiff with the grievances and Plaintiff left the officer's station without further incident. (*Id.*) In an action under § 1983, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. The Court must therefore analyze the actions of Defendant Newcomb separately from

17

those of Defendant Johnston. In so doing, the Court cannot conclude that the action of Defendant Newcomb in handing grievances to Plaintiff was sufficiently adverse so as to state a claim for First Amendment retaliation. Thus, for both reasons, the Court will dismiss Plaintiff's claim of First Amendment retaliation against Defendant Newcomb premised upon the events of June 24, 2022.

### b.     Class I Misconduct for Dangerous Contraband

Plaintiff also cannot state a claim of retaliation based upon Defendant Newcomb's action in writing Plaintiff a Class I Misconduct for "dangerous contraband." (ECF No. 1, PageID.7.)

First, to the extent that Plaintiff attempts to bring a claim against Defendant Newcomb related to the shakedown that preceded the issuance of the Class I misconduct, he cannot. For purposes of screening, the Court accepts as true Plaintiff's allegation that Defendant Newcomb told Plaintiff that the shakedown which led to the discovery of the weapon was retaliatory. (*See* ECF No. 1, PageID.7.) However, as previously discussed, Defendant Newcomb may be held liable only for his own misconduct. *Iqbal*, 556 U.S. at 677. Government officials may not be held liable for the unconstitutional conduct of others under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691 ; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). Plaintiff does not allege that Defendant Newcomb played any role in the shakedown such that it could be said that Defendant Newcomb engaged in any active unconstitutional behavior in that respect.

As to the issuance of the Class I misconduct, once again, the Court once again concludes that Plaintiff's grievances are protected conduct. *See Maben*, 887 F.3d at 265. The Court also finds that the "loss of privileges" sanction attendant to a misconduct determination would certainly rise to the level of an adverse action. *Id.* at 266–67 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse" (quoting *Hill v. Lapin*, 630 F.3d 468, 474 (6th Cir. 2010))). However, Plaintiff's allegations fall short with regard to a retaliatory motive.

18

Plaintiff does not allege facts that would demonstrate that Defendant Newcomb's issuance of the misconduct for possession of dangerous contraband was motivated by retaliatory animus, particularly where Plaintiff acknowledges that he was ultimately found guilty of the same. (ECF No. 1, PageID.11.) Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. The Court will therefore dismiss Plaintiff's claims of First Amendment retaliation against Defendant Newcomb.

### E. Defendants Giles, Johnston, and Wight

Plaintiff alleges that Defendants Giles and Johnston were deliberately indifferent to Plaintiff's health and safety (Count I) and subjected Plaintiff to an excessive use of force (Count II) in violation of Plaintiff's Eighth Amendment rights. (ECF No. 1, PageID.12.) Plaintiff also alleges that Defendants Giles, Johnston, and Wight retaliated against Plaintiff in response to Plaintiff's actions in filing grievances and complaints, in violation of Plaintiff's First Amendment rights (Count IIII). (*Id.*) Accepting Plaintiff's factual as true, the Court concludes that Plaintiff has alleged sufficient facts to state claims against Defendants Giles, Johnston, and Wight under § 1983 as alleged in Counts I through III of Plaintiff's complaint.

## III. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (ECF No. 3.) In support of his motion, Plaintiff states that the issues involved in the case are complex and will involve complicated discovery issues, that Plaintiff has limited access to the law library and a limited educational background, and that justice would be served by appointing an attorney. (ECF No. 3, PageID.24.)

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel,

in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this time, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel, (ECF No. 3), will, therefore, be denied.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Newcomb, Bohen, Schaab, Washington, and Rewerts will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First and Eighth Amendment claims against Defendants Giles, Johnston, and Wight remain in the case. The Court will further deny Plaintiff's motion to appoint counsel (ECF No. 3).

An order consistent with this opinion will be entered.

Dated:   May 11, 2023                      /s/ Ray Kent
                                           Ray Kent
                                           United States Magistrate Judge